May it please the Court. Good morning, Your Honors. Chris Kilburn on behalf of the appellant, Mr. Antonio-Cruz. The issue in this case is whether or not the district court erred in finding Mr. Antonio-Cruz's property. Help me on this. 1326 has a list. Sometimes it's real hard for us to figure things out because it's not on the list, it's in the catchall, or maybe it isn't. This one, manslaughter, is in the list. The conviction is for manslaughter. We had a case where we came up with some really weird way you could be guilty of a crime that would not be generically the crime, under that language in Taylor. The Supreme Court said, don't be so crazy with these far-out hypos. If it looks like generally it's more or less the same generic crime, that's the end of it. I don't see where there's any room here. Manslaughter, the stamp demand to death, the South Carolina manslaughter law looks like just an ordinary manslaughter law. Where's the room for your argument? Well, Your Honor, I think the room for the argument is in coming up with what a generic definition of manslaughter is and the definition that I have suggested and the government has imposed is that manslaughter requires a reckless or wanton disregard specifically for human life, whereas in South Carolina it is simply for safety. That's a big enough difference? Well, it's a fine line. The way we learned it in law school is first degree premeditation and deliberation and malice of forethought, second degree malice of forethought, not necessarily premeditation and deliberation. Manslaughter, no malice of forethought needed, no intent to kill needed. I acknowledge that. However, in South Carolina I think they've even narrowed that and looked at the mens rea more specifically and under the federal case law in their interpretation of the federal statute, which we suggested should be the generic definition. Now, you submitted a 28J letter that contains some South Carolina cases that define that show that involuntary manslaughter can be predicated on negligence. That's correct, Your Honor. Dating back to 1910, there is a line of cases, and that's noted in footnote 7, section 15.4 of La Fave, that indicates when dangerous instrumentality is used, normally a car or a gun. Let me ask you this question. Do you have any cases that have been interpreting the statute that we are considering? Well, I think the Burris case, which is cited there in 1999, cites with approval, I think it's ‑‑ What year was the statute enacted? The statute we're looking at was amended in 1976. Okay. So in 1999. 1999. It cites with approval a case ‑‑ From 54. From 54, yes, which cites back to Tucker. And so I think that is a way in which the statute is narrowed, although most of the case law says it ‑‑ Well, but it says, the case you cited talks about simple negligence suffices if involuntary manslaughter involves a dangerous instrumentality, a vehicle. That's not what we have here. No. In fact, we don't. I acknowledge the record of conviction doesn't establish what kind of instrumentality was used. It wasn't admitted to. There was a knife. Well, that's not a ‑‑ There was a stabbing, Your Honor. I don't believe anywhere in the record it establishes that it was a knife as opposed to an ice pick or a beer bottle or what have you. The dangerous instrumentality statute is different with South Carolina from the one under which he was convicted, correct? I don't think there's a difference in statute. I think there's a difference in how the South Carolina common law or the states treat dangerous instrumentality in some cases. I mean, it's not all cases, but I cited that line of cases, obviously, because it's favorable to us, I believe. And even in looking at the dangerous ‑‑ whether dangerous instrumentality was used or not, this Court has said when there is a judgment, and, I mean, I believe the second document submitted amounts to a judgment, and a charging document, then in order to establish that the charging document was admitted to, there has to be the words as alleged in the indictment. So I was thinking, I mean, that is not contained within the judgment. So we really don't know what elements he ‑‑ So your argument is if we don't find it to be a categorical crime of violence, we can't find it to be a crime of violence under the modified category. That's correct. Because there are not sufficient cognizable documents to rely on. That's correct, Your Honor. I still don't understand, though, why the categorical approach doesn't compel the conclusion. I've been trying to think of the mildest case, because he did get a really short sentence. Bar fight with a beer bottle. Mildest possible manslaughter, and that would explain why he got such a short sentence. Still, it sounds like generic manslaughter. I mean, you hit somebody in the face with a beer bottle, cuts the artery in his neck, and he dies. Either it's self‑defense or it's manslaughter. Well, I think, Your Honor, you have to focus on, or what we would like the Court to focus on, is as the Federal courts have interpreted the Federal statute, which we propose should be the generic definition, it requires actual knowledge and conscious risk that what I am about to engage in will cause or could cause the death of another. And I think in South Carolina, if you look, I don't have any case law. I think that's pushing it a bit much for Taylor's generic manslaughter notion. You think that's ‑‑ You have to start with Federal manslaughter, and it has to be at least as demanding. I think that we have to establish somewhere a generic definition. And I'm not sure it even is less demanding. Well, I ‑‑ I'm looking at it here. It says reckless disregard for the safety of others. Your question isn't important, Your Honor. If you look at the dictionary definition of safety, the person has to be dead, right, for South Carolina manslaughter. It can't be of safety of others in the sense I might cause him to stub his toe by. Sure. But you have to, I think, look at the mens rea of the actor preceding the death. What actions did the defendant take preceding whatever he did that was the approximate cause of the death? And what is the difference between reckless disregard and what you think is the generic manslaughter mental requirement? I think the generic manslaughter, if you look at the Federal definition, or even at the FAVE, which talks about reckless disregard for human life and serious bodily injury, I mean, serious bodily injury defined in the guidelines is much higher, I believe, than the dictionary definition of safety. So you have no problem with the phrase reckless disregard. Your problem is with the phrase safety of others. That's correct. Because it might mean that it has to do with less than risk of life. That's correct. And if you look at the dictionary definition, which is about all we have, because there's no case law in South Carolina or statute defining this, safety is to be secure from injury, damage, harm. That would be the kind of mens rea we're talking about suffices in South Carolina. But don't we have to look at how the South Carolina courts have actually interpreted this particular statute? Yes, Your Honor. You can't just imagine any kind of speculative scenario. Yes, Your Honor. Under Duaneus Alvarez, I think you're correct, and my first response would be that the statute is facially broader, so therefore under, I think, Griselle and the court's case last week, Vidal, we don't need to look at the case law. There's no requirement. We aren't going through legal imaginations to find that it would cover conduct that's broader. Then we have to look at whether or not, as a practical matter, it has been applied broadly. We don't just look at it esoterically. We don't just look at the language of it. We look at it and see whether or not the South Carolina courts have applied it more broadly than the generic definition. I don't think Vidal requires you to take that step, and also, Your Honor, in an opinion you authored that the government cited, U.S. v. Gonzales-Perez in the second part of that case, you merely looked at the Florida kidnapping statute and determined it was facial. But that was pre-Duaneus. That's correct. But even under Duaneus, I think Vidal interprets the statute as the court applied it, or the analysis as the court applied it in Gonzales-Perez. As well, we have the line of cases to fall back on. If you're looking how the South Carolina courts have interpreted this, which I cited in the last Rule 28J letter, which says if dangerous instrumentality is used, then mere negligence suffices. Counsel? Yes, sir. What I would expect to be helping to resolve a case like this is a bunch of citations to South Carolina cases where they tell what these phrases mean. And I didn't see any in the blue brief, and I think there's just one in the red brief. And I don't think there is a gray brief. Am I missing something? Did you cite any South Carolina cases that say what they mean by safety of others? There is no. I found no South Carolina case law on point in terms of the definition of safety. That's why I'm referring to the dictionary definition as last resort and also the cases that we did cite, and I apologize, rather late last week in the Rule 28J. So I'm thinking you didn't find any cases where they applied safety of others in such a way that somebody's convicted when? For not building a child into a car or not fencing a pool or something like that. No. Okay. I mean, most of these cases are gun cases and car cases. Doesn't that hurt your argument, though? I acknowledge that, yes, yes. But I believe if you look at the dictionary definition of safety and also the line of cases involving negligence. So what you're saying is the South Carolina statute could convict a parent of manslaughter because they didn't seat belt their kid in when they drove to the shopping center and had an accident and the kid was killed. That's correct. Because it would be a reckless disregard. I understand that. That concreteness helps me understand your argument. Okay. Thank you. All right. Thank you. Good morning, Your Honors. May it please the Court. I'm Angela Woolridge representing the United States. You have some South Carolina cases that tell us what the statute means? Your Honor, from the South Carolina cases. You cited one of them, and it was about self-defense, so not much help. In our understanding from the statute itself and from both the cases cited by the defense in his letter and the case that we cited, that the definition in South Carolina is essentially the same as the generic core definition with the slight variance of word choice, which we believe is inconsequential. And I don't think that there has been any choice. As opposed to an argument about the conclusions, if you could just very briefly say facts holding in the Carolina cases that say what this statute means, then it actually would be helpful. Sorry, Your Honor? I mean, at this point, you're just telling me, well, read them for yourself and you'll see that my conclusion is correct. I'd rather get more help. And as far as we don't rely on any South Carolina cases to show that we didn't cite any South Carolina cases because we believe that it hasn't been applied in any way that would bring this conviction outside. Nobody carelessly kills anyone there and then appeals his conviction? Well, I believe that anyone could. There's a great gob of South Carolina cases saying what manslaughter is, and they've developed jury instructions, and I just don't know it. Well, Your Honor, it's our contention that it just simply isn't possible to apply the South Carolina statute in a way that would encompass conduct that wouldn't be encompassed under the generic statute. How about the seatbelt and swimming pool examples that your opposing counsel gave? And, again, there's no evidence and there's no cases that are before us that suggest that it would be applied in such a way. Are before us. How do I know what the South Carolina cases say? You won't put them before us, even though I keep asking. Your Honor, it's our contention that, and, again, this Court pointed out, that we can't think of just a far-out hypothetical, but we must look at. It's not so far out. People drive to the mall all the time. Sometimes they seatbelt their kids in, sometimes they don't. Where I live, Alaska, there aren't a lot of outdoor swimming pools. But in a warmer place, there are. Sometimes people put chain-link fences around them, sometimes they don't. People get real upset, go to the cops if their kid falls in and dies. I would really like to know what the law is in South Carolina. And, Your Honor, I would submit to the Court that even those hypotheticals would still fall under the generic definition because if they result in the killing of another individual, it's still done with reckless disregard for human life. How about negligence? Why wouldn't that just be negligence? It seems like ordinary negligence to me, but I don't know what South Carolina does. Well, and South Carolina requires that it defines that involuntary manslaughter must be conducted with criminal negligence, which it defines as reckless disregard for the safety of others. But we don't know how it's actually going to apply because at least two of the cases that were submitted by opposing counsel talk about negligence as being adequate for involuntary manslaughter. And, again, I think we have to look at how South Carolina defines negligence. I would like to. Why can't we? Why is nobody showing us? I think because the statute is conclusive when the statute and its section ---- The statute can't be conclusive if it says reckless disregard and we have cases that talk about negligence. That's the problem. And, again, I think we're looking at a case from 1910 that was several years before the statute that's an issue here. That's one of our issues, 1999 as well. And I think that the distinction is in that case they're talking about negligence committed with a deadly weapon or a dangerous instrument rises to the point where it's in reckless disregard for the safety of others. And I think ---- Does the Supreme Court of South Carolina affirm or reverse manslaughter convictions where a kid fell into a pool or a kid was killed in a car accident because he didn't have his safety belt on? Do they affirm or reverse those convictions? Your Honor, I'm not aware of any convictions in South Carolina either affirmed or reversed that involve those under involuntary manslaughter that involve those facts. Do you know? Have you searched the South Carolina cases? I have not read every South Carolina case on involuntary manslaughter, no. You can't represent one way or the other whether those convictions will stand. I cannot. But it's my belief in reading the statute and the case law that we have looked at that there's not going to be a conviction in South Carolina under circumstances that don't involve reckless disregard for safety. What cases did you look at to make that determination? Well, we looked at the cases that were cited by the defendant and also that were referenced in the annotations in the 1976 amendment to the statute. You didn't do any research of your own for post-1976 South Carolina Supreme Court cases? Again, Your Honor, no. And it's because our interpretation was that the language of the statute did not allow for convictions to be upheld. Oh, you thought I'm so obviously right in how to read the statute I don't need to look at the cases? No, Your Honor. Your Honor, I believe that it's not a matter of our position. We're saying that our position is so obviously right, but I think that the plain reading of the statute and I think that that's what the court requires us to do and that's what our case law requires us to do in this Court's previous holding is just to look at the wording of the statute and to determine whether that interpretation. What case from this Court says that you look only at the wording and don't look at how the state has applied that statute? Well, Your Honor, obviously there's not a case that says those exact words, but looking at the Velazquez-Reyes case and the – I'm sorry if I could have just a minute. Looking at the Velazquez-Reyes case, it tells us that it's not necessary that the statute of conviction mirrors exactly what we have as a generic definition, but rather that there be no meaningful distinction in the applicability of the statute. What language are you looking at in Velazquez-Reyes? And I apologize, Your Honor. We did incorrectly cite on page 13 of our brief it should be at 1230 instead of 1203, and I apologize for that. But what language is that? What language are you relying upon to say that you just look to the language of the statute and not to how the State interprets it? What language in Velazquez says that? I think that – I think that Velazquez tells us, and if I may, I think that Velazquez as well as in Vidal tells us, again, that there must be a realistic probability, not a theoretical possibility that looking at – looking to the words of the statute and not to how the State has applied it. So I'm asking you, what language in Velazquez says that? I think that it indicates to us that we look to the statute itself to whether there is – to whether there is a – and I apologize, I think maybe the correct – the correct cases would be – to answer the Court's question would be the recent Vidal case cited by the defense and also in the Supreme Court case of Duenas-Alvarez, that we look in comparing the State statute to our generic definition that there must be a realistic probability, not a theoretical possibility, that a State would apply its statute to conduct that falls without – outside of the generic definition. But how do we determine how the State applies its statute if we don't look at the State's cases? I think that we can look at the language. I don't think that we need to examine any – every case or every possible outcome to make that determination of whether it's realistically probable that we would see this statute applied in a context that would fall without – fall outside of the generic definition of the term. And just in summation, I would – I see that my time is up. If I would just – if the Court would allow me a few moments to sum or if there are any additional questions. I think we've got the argument. Thank you, counsel. Thank you. I can't remember. I think you saved a little time. No, it doesn't look like it. I think 30 seconds or so. Okay. I would just direct the Court's attention to Lefebvre's final note in terms of the generic definition of the federal statute. Case law is not acceptable to establish a generic definition. And that – You have no more South Carolina law than you gave us either, right? No, sir, I don't. Other than Lefebvre, Section 15.4 footnote 7 points out that South Carolina is anomalous compared to the rest of the States because mere negligence suffices to establish in support of an involuntary manslaughter condition. Thank you. Thank you. United States versus Antonio privilege is submitted.
judges: Kleinfeld, Rawlinson, Restani